Milton H. Butler v. Frank C. Duncan, impleaded with Lucius C. Frazer.

Frank C. Duncan v. Milton H. Butler.

*Unconscionable dealing of money-lender set aside.*

A dissolute spendthrift of 25 gave a mortgage on all the real estate to which he was entitled as his father's heir, to a man who knew all about the circumstances, to secure the payment of an alleged loan of $5000 for which he gave his note and which was made up of the following items: $1000 in cash; a former due-bill for $47, given up; $199 interest credited on a previous mortgage; $110.35 paid as premium upon an insurance policy assigned to the mortgagee; $556.75 withheld by the latter to pay annual premiums thereafter as they should fall due; and $3200 as the purchase price of 160 acres of land worth but little more than $1000 and which the mortgagee required him to buy as a condition of lending him any money, though he had

no use for the land and knew nothing about its value. *Held*, an unconscionable transaction which a court of chancery could not sustain, and that the mortgager should have leave to reconvey the land, though his mortgage should be held good for the other amounts provided the insurance policy were reassigned to him.

Appeal from Wayne. Submitted Oct. 12. Decided Oct. 19.

BILL of foreclosure. Cross-bill to compel discharge of mortgage. Decree granting foreclosure and dismissing cross-bill. Reversed.

*Wisner & Speed* and *T. M. Crocker* for Butler.

*Moore, Canfield & Warner* for Duncan. A mortgagee whose dealing with the mortgager has been unconscionable has the burden of showing that he is entitled in equity to enforce his securities : *Aylesford v. Morris* L. R. 8 Ch. App. 484 : 6 Eng. 443; so also where the dealing has been with an expectant heir : *O'Rorke v. Bolingbroke* L. R. 2 App. Cas. 814 : 21 Eng. 68; Bispham's Eq. § 220; *Earl of Chesterfield v. Janssen* 1 Lead. Cas. in Eq. 344; 12 Cent. L. J. 413; *Bowes v. Heaps* 3 Ves. & Beames 117; *Tyler v. Yates* L. R. 6 Ch. App. 665; *Miller v. Cook* L. R. 10 Eq. Cas. 639; *Beynon v. Cook* L. R. 10 Ch. App. 389; *Clark v. Malpas* 4 De G. F. & J. 400; *In re Slater's Trusts* L. R. 11 Ch. Div. 227; *Croft v. Graham* 2 De G. J. & S. 155; *Smith v. Kay* 7 H. L. Cas. 750; *Talbot v. Staniforth* 1 J. & H. 484; *Allore v. Jewell* 94 U. S. 506; *Harding v. Handy* 11 Wh. 125; Bigelow on Fraud 394; *Powers v. Hale* 25 N. H. 153; *Seymour v. DeLancey* 6 Johns. Ch. 222.

MARSTON, C. J. No extended discussion of the facts is deemed necessary in this case. The bill was filed to foreclose a mortgage given by Duncan October 14, 1878, to complainant to secure the payment of a note for $5000 drawing ten per cent. interest payable semi-annually. The property covered by the mortgage was all the right, title and interest of Duncan in and to any real estate, situate in Michigan or elsewhere, which he acquired as heir at law or

devisee under the last will and testament of his father William C. Duncan. Duncan appeared, answered and afterwards filed a cross-bill, setting up substantially the same facts set forth in his answer, and asking relief.

It appears that Duncan was a young man of dissolute habits, a spendthrift and of not much business experience. Although he had an income of $100 per month from his father's estate, yet he seems to have been in want of money; he had previously borrowed from Mr. Butler, and early in October, 1878, made application for another loan. The first application was not entertained, but at a subsequent interview Butler informed him that he Butler owned 160 acres of land in Grand Traverse county, and that if he, Duncan, could use that land, and would take it at $3200, he, Butler, would make the loan, but at the same time refused to do anything farther until Duncan would go see the land and thus ascertain its character and value. Directions were given Duncan how to get to the land, and with a friend named Hill, Duncan started, got as far as Grand Rapids, remained there a day or two, returned to Detroit and informed Butler they had seen the land; that it was satisfactory and that Duncan would take it. Thereupon a conveyance of this land was made to Duncan; a due bill of Duncan's which Butler held for $47 was surrendered up; a credit of $199 interest upon a previous mortgage held by Butler was endorsed, and $1000 in cash was paid to Duncan. At the same time a policy of insurance upon Duncan's life was taken out and assigned to Butler, upon which the premium $110.35 was paid, and $556.75 was retained by Butler to pay annual premiums on such policy thereafter as the same should become due, thus making up the sum of $5000 for which Duncan gave his note and the mortgage in question to secure the same.

At the time of this transaction Duncan was about 25 years of age, and while there was an apparent fairness on the part of Butler, especially in requiring Duncan to examine the Grand Traverse lands, yet when we look into the entire matter we find it of so unconscionable a nature that a

court of chancery could not lend its aid in enforcing it. The title to the Grand Traverse lands was defective and the value thereof was but little, if any, over $1000. Duncan knew nothing about the value of such lands, would not have known even had he examined them, and could have had no possible use for such lands except to raise money thereon, all of which facts were fully known to Butler. The security given by Duncan was ample, and why a policy of insurance should have been taken out and assigned to Butler we are at a loss to discover, and more especially the reason for Butler's retaining in his hands the full amount of five years' annual premiums, while at the same time he had included such sums in his mortgage note and was receiving ten per cent. interest payable semi-annually thereon, although the money still remained in his own hands.

To state the transaction mildly, it was taking advantage of Duncan's weakness and anxiety, and under the guise of an apparently fair business transaction, exacting an usurious interest which a court of equity cannot sanction. In so far as the parties can be restored to their former position they should be, and the moneys received by Duncan he should pay with interest thereon as he agreed.

The decree below must be reversed, and one entered giving Duncan the right to reconvey to Butler the Grand Traverse lands; that Butler's mortgage be held good for the $1000 paid, the amount of the due-bill, and endorsement upon the previous mortgage debt, and the premiums paid upon the $5000 insurance policy, with interest thereon from the date of each payment, conditional however that Butler re-assign such policy to Duncan; and that if such sums are not paid within ninety days then that Butler proceed to sell the mortgaged premises. And the cause will be remanded to the court below to render and enforce a decree in accordance with this opinion, Duncan to recover costs of both courts.

The other Justices concurred.