110  107
116  542
110  107
a128 339

[No. 18443.   Department Two.—November 18, 1895.]

# WILLIAM T. BOYCE, Administrator, etc., Appellant, *v.* ASA FISK, Respondent.

Mortgage by Deed Absolute — Redemption — Excessive Interest — Equitable Relief.—In order to redeem from a deed absolute in form, which was intended as a mortgage, the mortgagor must pay the rate of interest agreed upon in the note which was given for the indebtedness secured by the deed, although such interest is largely in excess of the current rates prevailing at the date of the note, and equity can grant no relief against such interest because merely of the excessive rate, in the absence of proof of other circumstances tending to show actual fraud, or oppression and overreaching, warranting the inference of undue advantage.

Id.—Contract for Interest—Equity Bound by the Law.—In this state parties may agree in any contract in writing for the payment of any rate of interest, and it must be allowed, according to the terms of the agreement, until the entry of judgment, and courts of equity are as much bound by the laws of the land as courts of law.

Id.—Hard Bargain.—The fact that a bargain is a very hard or unreasonable one is not sufficient *per se* to induce a court of equity to interfere with the contract.

Id.—Statute of Limitations—Condition of Redemption.—The fact that the debt is barred by the statute of limitations does not absolve the mortgagor who would redeem the mortgaged property from paying the debt as a condition of redemption.

Id.—Action to Quiet Title—Form of Judgment Allowing Redemption—Remedy for Outlawed Debt—Dismissal—Bar of Plaintiff's Right.—In an action to quiet the title of the plaintiff to land which had been conveyed to the defendant as a mortgage security to pay a note which had been barred by the statute of limitations, although the plaintiff cannot have his title quieted while the money for which the mortgage was given remains unpaid, and the court may provide by its judgment for the payment of the amount due, yet the defendant cannot have any affirmative remedy for his outlawed debt, and the only proper judgment would be that upon the failure of the plaintiff to pay the amount remaining unpaid upon the mortgage debt within a time specified by the court, the action should be dismissed, and it is erroneous to adjudge that upon the failure of the plaintiff to pay that amount, all his right

and title to the mortgaged premises shall cease and determine, and that the title of the defendant thereto shall be good and valid, and that plaintiff shall be barred from asserting any claim, interest, or title to the premises.

ID.—WAIVER OF STATUTE OF LIMITATIONS—ESTATES OF DECEASED PERSONS—POWER OF ADMINISTRATOR.—An administrator will not be permitted to waive the statute of limitations upon a claim which is barred by the statute of limitations, and he does not waive such claim, nor the presentation of it against the estate, by bringing an action to quiet the title of the estate as against one to whom the decedent had conveyed his land to secure a debt which is barred by the statute of limitations.

APPEAL from a judgment of the Superior Court of Fresno County. J. R. WEBB, Judge.

The facts are stated in the opinion of the court.

*Bert Schlesinger, John L. Boone,* and *George L. Hood,* for Appellant.

The terms imposed on the appellant by the lower court were unreasonable. It should have only made him do equity by paying the original debt with legal interest from the date of the loan until paid. (1 Pomeroy's Equity Jurisprudence, 385, 386; *Hanson* v. *Keating,* 4 Hare, 1; *Booth* v. *Hoskins,* 75 Cal. 276; *Spect* v. *Spect,* 88 Cal. 443; 22 Am. St. Rep. 314; *Fogg* v. *St. Louis etc. R. R. Co.,* 17 Fed. Rep. 871; *Brown* v. *Hall,* 14 R. I. 249; 51 Am. Rep. 375; *Sime* v. *Norris,* 8 Phila. 84; Story's Equity Jurisprudence, 188; *Kelley* v. *Caplice,* 23 Kan. 474; 33 Am. Rep. 179; 1 Parsons on Contracts, 437; *Floyer* v. *Edwards,* Cowp. 112; *Young* v. *Hill,* 23 Am. Rep. 110; *Davis* v. *Garr,* 55 Am. Dec. 397; *Breckenridge* v. *Brooks,* 2 A. K. Marsh. 335; 12 Am. Dec. 401.) The court erred in deciding that defendant should be entitled to the ownership of the premises unless appellant redeem within a certain time. (*Booth* v. *Hoskins, supra.*)

*Daniel Titus,* for Respondent.

Parties may agree in writing for the payment of any rate of interest, and it shall be allowed according to the terms of the agreement, until the entry of judgment.

(Civ. Code, sec. 1918; *Hinds* v. *Marmolejo*, 60 Cal. 229; *Farmers' Nat. Gold Bank* v. *Stover*, 60 Cal. 387.) A mortgagor cannot recover the possession of the mortgaged premises from the mortgagee without paying the mortgage debt, even though the statute has run against the debt, thereby taking from the mortgagee his remedy for its enforcement. The mortgagor is not entitled to any relief without first paying the mortgage debt. (*Booth* v. *Hoskins*, 75 Cal. 271; *Zellerbach* v. *Allenberg*, 99 Cal. 69; *Grant* v. *Burr*, 54 Cal. 298; *Spect* v. *Spect*, 88 Cal. 437; 22 Am. St. Rep. 314; *Phyfe* v. *Riley*, 15 Wend. 248; 30 Am. Dec. 55; *Hubbell* v. *Moulson*, 53 N. Y. 225; 13 Am. Rep. 519; *Fee* v. *Swingly*, 6 Mont. 596; *Roberts* v. *Sutherlin*, 4 Or. 220; *Cooke* v. *Cooper*, 18 Or. 142; 17 Am. St. Rep. 709; *Frink* v. *Le Roy*, 49 Cal. 314; *Tallman* v. *Ely*, 6 Wis. 244; *Brinkman* v. *Jones*, 44 Wis. 512; *Sahler* v. *Singer*, 44 Barb. 614; Jones on Mortgages, sec. 715.)

THE COURT.—This action was brought to obtain a decree to the effect that Thomas Boyce was, at the time of his death, the owner in fee simple of an undivided half of section 15 in township 14 south, range 14 east, Mt. Diablo base and meridian, situate in the county of Fresno, state of California; that an accounting be had to determine the amount due to defendant upon a mortgage; and that defendant has no right, title, or interest in the land, except as a mortgagee thereof, and that upon the payment to defendant of such sum as may be found due him (if any) he be required to satisfy his mortgage.

The cause comes up on the appeal of plaintiff from the final decree, and is presented upon the judgment-roll, unsupported by any statement or bill of exceptions.

The findings show that on the seventh day of August, 1880, Thomas Boyce was the owner of the tract of land hereinbefore mentioned, and that on said last-mentioned day he borrowed from Asa Fisk, the defendant and respondent herein, the sum of $260, and made to the latter his promissory note in writing in the words and figures following:

"SAN FRANCISCO, CAL., Aug. 7, 1880.

" $260.00.

" Thirty days after date (without grace) I promise to pay to Asa Fisk, or order, the sum of two hundred and sixty dollars, to be paid, only in gold coin of the government of the United States of America, for value received, with interest thereon in like gold coin from maturity at the rate of four (4) per cent per month until paid. Interest to be paid monthly in advance, and if not so paid to become a part of the principal, and bear thereafter the same rate of interest, compounded monthly in advance, for value received. This note to be paid at the office of Asa Fisk.

[Signed]  " THOMAS BOYCE."

To secure the payment of the said promissory note, Boyce executed and delivered to Fisk a deed of conveyance, absolute in form, but intended as a mortgage of the tract of land hereinbefore mentioned, and at the same time, and as further security, assigned to said Fisk a policy of insurance, fully paid up, upon the life of him, the said Boyce, issued by the Connecticut Mutual Life Insurance Company of Hartford, Connecticut.

No part of the promissory note, principal, or interest was ever paid by Boyce or by any one up to the date of his death, which occurred on the eleventh day of October, 1892. On the 28th of March, 1893, Fisk collected $1,150 on the said policy of insurance, and applied the same on account and in part payment of the interest then due on the said promissory note. Fisk paid all the taxes levied upon the land, amounting to $108.31, and never claimed to hold or own the land except as a mortgagee. Plaintiff was duly appointed administrator of the estate of said Thomas Boyce, deceased, April 17, 1893, and duly qualified, and is still acting as such administrator.

The court further found that " by the agreed statement of facts herein, that it has been stipulated that the court may grant to either party such proper, legal, or equitable relief as either party may be entitled to under

said stipulation and the pleadings and facts in the case, and in accordance therewith, and as equitable adjustment and decision."

The court then proceeded to allow to defendant, Fisk, interest upon the promissory note according to its terms for four years from its date, and seven per cent per annum upon the amount thus found due at the expiration of said term of four years; deducted the sum collected on the insurance policy in 1893, leaving a balance due at the date of the decree of $1,606.06, and decreed that upon the payment of said sum of $1,606.06, with legal interest thereon from the date thereof, within one year from said date, viz., May 14, 1894, the defendant should satisfy the mortgage. Also that should plaintiff fail within one year from said date to pay said sum of money, then and in that event his right to the land should cease and be barred, and defendant's title thereto should be good and valid, and that each party should pay his own costs. A decree was entered accordingly.

The contention of appellant is that the terms imposed by the superior court upon plaintiff, as a condition of the redemption of the property, are unreasonable and exorbitant; that the terms of the promissory note to defendant were so manifestly unjust and oppressive that a court of equity should refuse to uphold them, and that plaintiff should only be called upon to return the money borrowed, with legal interest thereon.

We can only look to the amended complaint, answer, findings, and decree in determining the questions presented. The real question under these circumstances is, Do the findings respond to the issues, and do they support the decree?

Finding 8 is to the effect that the parties have stipulated " that the court may grant to either party such proper, legal, or equitable relief as either party may be entitled to under said stipulation and the pleadings and facts in the case, and in accordance therewith, and as an equitable adjustment and decision."

Turning to the complaint we find therein no charge

or suggestion of mistake or accident in making the note, or that defendant Fisk was guilty of any misrepresentation, fraud, or oppression in procuring decedent, Thomas Boyce, to make the note, or execute and deliver the securities. If the plaintiff, as representative of Thomas Boyce, deceased, is entitled to any relief in a court of equity, if he is entitled to redeem the mortgaged property without a compliance with the terms and conditions of the agreement made by his decedent, it must be upon the ground that the terms and conditions of the promissory note were so onerous as to authorize the court to refuse to enforce its provisions.

In this state " parties may agree in any contract in writing for the payment of any rate of interest, and it shall be allowed, according to the terms of the agreement, until the entry of judgment." (Civ. Code, sec. 1918.)

Courts of equity are as much bound by the laws of the land as courts of law, and neither may set aside or annul contracts, made in strict compliance therewith, with impunity. The rate of interest provided for in the note to Fisk was, no doubt, largely in excess of the current rates prevailing at the date of the note in question. At an early period in the history of this state the rate of interest agreed upon in this note would have been much below current rates. · When given it was much greater than such rates.

No doubt the excess of interest is a circumstance which, coupled with others tending to show actual fraud, or such circumstances of oppression and overreaching as warrant the inference of undue advantage, is sufficient cause for setting aside a contract. But without some such showing a court of equity may not disregard the contract which the parties have deliberately made, and make a new one for them. If the court, under such circumstances, can decree the rate of interest stipulated in a given written contract as being too large and establish a lower rate, then, by parity of reasoning, it should be at liberty in a similar case, but where the rate of in-

terest agreed upon is deemed too small, to fix a larger one, and thus it would, in effect, become the guardian of business men, and be at liberty to supervise and modify all their contracts.

Had Fisk brought an action to foreclose his mortgage within the lifetime of his demand, can there be any doubt but that, in the absence of any showing of fraud or mistake, he would have been entitled to a decree? We think not.

The fact that his debt is barred by the statute of limitations does not absolve his mortgagor, who would redeem the mortgaged property, from paying the debt. The moral obligation remains and rests upon the mortgagor who would redeem to pay, as a condition thereof, the sum of money which the mortgagee could have recovered but for the bar of the statute. (*Spect* v. *Spect,* 88 Cal. 437; 22 Am. St. Rep. 314; *Booth* v. *Hoskins,* 75 Cal. 271; *Grant* v. *Burr,* 54 Cal. 298; *Zellerbach* v. *Allenberg,* 99 Cal. 69.)

We have examined with care the several cases cited by the appellant in support of his contention. *Brown* v. *Hall,* 14 R. I. 249, 51 Am. Rep. 375, which may be regarded as a leading case, was a bill to redeem from a mortgage in which the complainant sought to have the interest (five per cent per month) reduced to a legal or reasonable rate on the ground that the stipulated rate was grossly exorbitant.

The complaint stated particularly the circumstances under which the note and mortgage were originally given for the purpose of showing that he did not fully understand the terms of the note when he signed it, and that the defendant took advantage of his necessities and inexperience and of his confidence, to overreach and impose upon him. The court allowed the conventional interest, for six months, under a statute of Rhode Island, which permitted borrowers and lenders to make their own terms in regard to interest, and reduced the interest to a reasonable rate, after the maturity of the note.

It is not plain, from the report, what the evidence showed, but it may fairly be inferred that it went beyond the allegations of the complaint, for the court said: " We hesitate at this decision only because the facts on which we rest it are very imperfectly alleged in the bill. The facts, however, were put in evidence without objection, and this being a bill to redeem, we do not think we ought to oblige the complainant to submit to unjust terms of redemption by reason of any technical defect, but should rather permit him to amend, if amendment be necessary, on proper terms."

It is very apparent that in that case the elements of fraud and oppression on the part of the mortgagee concurred, with the rate of interest charged, to convince the court that such fraud had been practiced as to warrant a reduction of the conventional rate of interest agreed upon.

*Hough* v. *Hunt*, 2 Ohio, 495, was a case in which Hough, being oppressed for money, applied to Hunt for a loan of $2,600. Hunt agreed to lend him $10,000 on condition that he, the said Hough, should purchase from him 593 acres of land at $20 per acre, being more than double its value. A portion of the money was loaned.

In an action by Hough for relief the court rescinded the contract for the land, being of opinion that Hunt had taken an unfair advantage of Hough's necessities. The court said: " When a person is encumbered with debts, and that fact is known to a person with whom he contracts, who avails himself of it to exact an unconscionable bargain, equity will relieve on account of the advantage and hardship. Where the inadequacy of the price is so great that the mind revolts at it, the court will lay hold of the slightest circumstances of oppression or advantage to rescind the contract."

In *Butler* v. *Duncan*, 47 Mich. 94, a young man of dissolute and prodigal habits, in want of money, had given his note for $5,000, secured by mortgage with interest at ten per cent per annum, on all his property, and had received only about $2,000, and 160 acres of

land for $3,200, which was worth little over $1,000. In rescinding the contract the court said: "To state the transaction mildly, it was taking advantage of Duncan's weakness and anxiety, and, under the guise of an apparently fair business transaction, exacting a usurious interest, which a court of equity cannot sanction."

In this last case, as in the Ohio case, *supra,* it is apparent that an attempt was made to evade the usury law of those states, which in itself, if fully proven, was sufficient to invalidate the contracts, and which, coupled with circumstances of fraud on the part of the parties loaning their funds, served to justify the rulings. In the present case the loan was made, not in evasion of, but pursuant to the letter and spirit of the law, and no circumstances of fraud are charged.

The case of *Sime* v. *Norris,* 8 Phila. 84, seems to fully sustain the contention of appellant, yet we do not think it can be upheld as the law of this state. The case was this: In 1864, the defendant, Morris, at San Francisco, California, had made his promissory note to Robbins for $4,125, payable thirty days after date, with interest at two and one-half per cent per month, payable monthly in advance, and if not so paid to be compounded, and become a part of the principal, and bear like interest. The action was by an indorsee against the maker. The claim when sued amounted to over $26,000, and Sharswood, J., said: "I think this contract, though lawful, was an oppressive and unconscionable one, which the courts of this state [Pennsylvania] ought to have no hand in enforcing according to its letter," and ordered judgment for the principal, and the legal rate of interest then prevailing in California, viz., ten per cent per annum.

The strongest showing in behalf of appellant which we have found is contained in Story's Equity Jurisprudence, at section 331, where he says: "And here we may apply the remark that the proper jurisdiction of courts of equity is to take every one's act according to conscience, and not to suffer undue advantage to be

taken of the strict form of law or of positive rules. Hence it is that even if there be no proof of fraud or imposition, yet if, upon the whole circumstances, the contract appears to be grossly against conscience or grossly unreasonable and oppressive, courts of equity will sometimes interfere and grant relief, although they are certainly very cautious of interfering, unless upon very strong circumstances. But the mere fact that the bargain is a very hard or unreasonable one is not generally sufficient *per se* to induce these courts to interfere. And indeed it will be found that there are very few cases not infected with positive or actual fraud in which they do interfere, except where the parties stand in some very peculiar predicament, and in some sort under the protection of the law from age, or character, or relationship."

The cases cited by the learned author tend to show that, except in case of fraud or imposition, and except where the parties stand in some peculiar predicament by reason of age or condition, such as expectant heirs, sailors, and the like, courts of equity only interfere in the most extraordinary cases.

The fact that a bargain is a very hard or unreasonable one is not in itself sufficient, and that is all that can be said of the contract in the present one. But that part of the judgment which decrees that upon the failure of plaintiff to pay the amount remaining unpaid on the mortgage, all his right and title to the mortgaged premises shall cease and determine, and the title of the defendant thereto shall be good and valid, and plaintiff shall be barred from asserting any claim, interest, or title unto said premises, is unwarranted and erroneous. The proper judgment would be that upon the failure of plaintiff to pay the said amount within the time specified by the court, the action be dismissed. (*Cowing* v. *Rogers*, 34 Cal. 655; *Booth* v. *Hoskins, supra.*) Although plaintiff cannot have his title quieted under the facts here presented, while the money for which the mortgage was given remains unpaid, still the defendant can have

no affirmative remedy for his outlawed debt—which the judgment as it stands would give him.   If plaintiff were suing in his own right, it might, perhaps, be plausibly argued that by his complaint he waived the defense of the statute of limitations against the barred debt of defendant; but an administrator will not be permitted to waive either the general statute of limitations or the failure of a party to present his claim.   The judgment must, therefore, be modified as above indicated.

The cause is remanded, with directions to the superior court to modify the judgment as above indicated, by striking therefrom all of the clause immediately preceding the last clause therein, commencing with the words, in folio 72 of the printed transcript: " It is further ordered," and ending with the words, in folio 73, " said premises or any part thereof "; and by inserting instead thereof a provision that if the plaintiff shall not pay the amount found to be unpaid upon the mortgage within a specified time after the entry of the modification of the judgment—the time to be fixed by the superior court—then this action shall be dismissed.   In all other respects the judgment appealed from is affirmed. Neither party is to recover costs of this appeal.